# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**JOSEPH HICKS**                                                                **PLAINTIFF**

**v.**                                                                           **NO. 3:22-CV-565-BJB**

**EXPRESS EMPLOYMENT**                                                           **DEFENDANT**
**PROFESSIONALS**

\*\*\*\*\*

## MEMORANDUM OPINION & ORDER

Joseph Hicks claims that Express Employment Professionals (a temp agency) defrauded, deceived, and discriminated against him. Because none of these allegations, even assuming their truth, would expose Express to liability, the Court grants Express's motion to dismiss.

### I.

According to the *pro se* complaint, which the Court must accept as true, Joseph Hicks heard a help-wanted advertisement on the radio for jobs at Express. Complaint at 2. He visited Express's office in Jeffersontown, Kentucky, where someone showed him a computer screen displaying more than 35 job listings. *Id.* After completing an application, someone at Express told Hicks there were "no available job openings," but that he would be contacted "by phone, text, or email concerning openings." *Id.* Days later, Hicks returned to the Express office, asked to see the computer screen with the job listings, and was denied. *Id.* Two weeks later, Hicks again returned to the same office. *Id.* Again, someone told him to "leave" and that "Express would contact him within two weeks concerning openings." *Id.* But no one ever did. *Id.* On top of that, Hicks believes that "an identity thief had opened a fraudulent account" in his name—though the basis for and nature of this allegation aren't evident from the complaint. *Id.*

Express in fact "never had any intention of hiring" Hicks, according to his papers. *Id.* Instead, the entire experience—the radio advertisement, the computer screen, the promised call-backs—was "a ruse" that Express devised to obtain personal information it could sell for profit. *Id.* at 2–3. Hicks attributes the alleged identity theft to Express as well. *Id.*

The complaint asserts two common-law causes of action (fraudulent misrepresentation and omission) as well as three statutory causes of action (false

1

advertising, deceptive business practices, and age discrimination). Express moved to dismiss all of Hicks's claims under Rule 12(b)(6). The Court agrees that Hicks failed to sufficiently state legally valid claims, and grants Express's motion to dismiss.

## II.

To survive a motion to dismiss, a complaint must provide "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." FED. R. CIV. P. 8(a)(2). It must "plausibly sugges[t]" that the plaintiff can establish the elements of the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "And a plaintiff's suggestion is plausible when it contains enough factual content that the court can reasonably infer that the defendant is liable." *Doe v. Baum*, 903 F.3d 575, 580 (6th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Court must of course "accept all of the plaintiff's factual allegations as true," "draw all reasonable inferences in the plaintiff's favor," and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." *Id.* at 581. This is particularly true because Hicks was acting *pro se* when he filed this complaint: the Court must "liberally construe" his pleadings. *Luis v. Zang*, 833 F.3d 619, 630 (6th Cir. 2016). But it need not "create a claim which the pro se plaintiff has not spelled out in his pleading." *Bar v. Kalitta Charters II, LLC*, No. 21-1739, 2022 WL 3042844, at *2 (6th Cir. Aug. 2, 2022) (cleaned up) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

### A. KRS § 517.030/False Advertisement

Hicks cites KRS § 517.030, a criminal statute that prohibits "knowingly mak[ing]" a "false or misleading statement" in an "advertisement addressed to the public" in connection with the "sale" or "consumption" of "property or services." Hicks doesn't expressly invoke § 446.070, but that statute creates a private right of action for persons claiming to be "injured by the violation of any statute"—including "penal" ones such as § 517.030. *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985).[1]

Even assuming the use of temp-hiring services (by filling out a job application, apparently at no charge, on a computer screen) amount to the "sale" or "consumption" of "property or services," Hicks hasn't plausibly alleged that Express made a false or misleading statement.

---

[1] In addition to KRS § 517.030 (false advertising), Hicks's complaint cites, without explanation, § 517.020—a deceptive-business practices provision. *See* Complaint at 3 ("Claim #1. False Advertising *and Deceptive Business Practices*" (emphasis added)). Given the lack of any argument or factual exposition in support, Hicks has abandoned any claim, which would be de minimis to the extent it's not entirely redundant: this claim would fail for the same reasons as his claim under the neighboring statutory section.

Hicks's theory of the case is entirely speculative. He fails to allege any facts plausibly supporting his accusation that Express designed its business to make money by inducing job-seekers on false pretenses to supply personal information that Express could surreptitiously sell to third parties. Nor does he allege facts that would tend to show Express did not in fact have jobs available or intend to match candidates to those jobs as appropriate. The assertion that Express advertised "immediate job openings" is plausibly supported by the radio-ad allegation. But the notion that these jobs actually didn't exist, and that Express had "no honest intentions of hiring" him and "never considered doing so" is pure conjecture. Complaint at 2. Certainly Hicks's own experience in not securing a job isn't by itself enough to infer that the whole scheme was a ruse, or that Express didn't seriously consider placing him in a job. This is the proper way for courts to read even ordinary civil allegations under Rule 12, *see Iqbal*, 556 U.S. at 679—to say nothing of how courts apply the heightened pleadings standard that applies to fraud claims under Rule 9, *see, e.g.*, *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 410–11 (6th Cir. 2022).

### B. Fraudulent Misrepresentation

To state a claim for fraudulent misrepresentation, a plaintiff must establish six elements: "(1) that the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff." *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009).

The complaint alleges that Express advertised that it had "immediate [job] openings"—which was "false" because "Express had no intention of offering any job" to Hicks and "never [offered him a job] at any time since." Complaint at 2–3.[2] Hicks also alleges that "Express lured [him] into filling out an application by showing a false list of local job openings on their in-house computer screen." *Id.* at 3.

An unstated premise of Hicks's claim is that Express lacked the job opportunities it offered to him and others. The only fact alleged in support is that

---

[2] The Complaint's summary section briefly mentions that Hicks was "told Express would contact him within two weeks concerning openings," yet he "never heard any word, notice or information from Express." Complaint at 2. Hicks didn't connect this statement to any claim, discuss it in his motion-to-dismiss responses, or identify any detrimental action he took in reliance on it. Indeed, Hicks alleges that he heard this statement *after* he "fill[ed] out [an] application." *Id.* (After Hicks's application "was complete," he "was then informed that Express would contact him by phone, text or email concerning openings."). So Hicks apparently was "unaware" of the prospect of a call-back when he completed the job application—and therefore "could not have relied upon" it. *Powers v. Kentucky Farm Bureau Mut. Ins. Co.*, --- S.W.3d ----, No. 2020-CA-1011-MR, 2022 WL 2279868, at *8 (Ky. Ct. App. June 24, 2022).

Hicks himself applied for but didn't receive a job. The mere absence of an offer, however, doesn't plausibly imply the absence of an opening. Hicks doesn't identify any job he was qualified for, or any qualifications he had for jobs generally, or any other person who applied to no avail. So the mere fact that Express did not offer Hicks a job does not "plausibly suggest" that Express's claim to have immediate openings was false. *Twombly*, 550 U.S. at 557. That Hicks didn't get a job through Express doesn't mean that Express had no jobs to give.

At best, it supports only "the mere possibility of misconduct," not a plausible factual allegation of misrepresentation. *Iqbal*, 556 U.S. at 679. So the Court is left with a "naked assertio[n]" that Express made false statements, devoid of "further factual enhancement." *Id.* at 678 (*quoting Twombly*, 550 U.S. at 557). Nor for that matter does an Express representation that the company had "immediate [job] openings" amount to a promise to offer, or consider offering, anyone a job. To the extent Hicks alleges that fraud rests "on promises made without an intention of performance," *Schroerlucke v. Hall*, 249 S.W.2d 130, 131 (Ky. 1952), he offers only a conclusory assertion that Express "made … claims of immediate openings knowing [it] had no intention of offering them to Plaintiff," Complaint at 3. What might suggest that Express contemplated this particular plaintiff (or anyone like him) when it ran the advertisement? Surely no facts found in the complaint. It just relays that Express implicitly held out the right to submit an application. This sort of conclusory allegation of fraud is "not actionable." *Joseph v. Shamrock Coal Co.*, 125 F.3d 855, 855 (6th Cir. 1997).

The complaint also fails to identify any injury beyond "a lifetime of worry over the personal information taken by Express." Complaint at 3. It says nothing about any cost, action, or loss suffered as a result of this worry. Nor does it describe any pecuniary or other non-psychic harm caused by any misrepresentation. This sole allegation turns on the implausible and conclusory allegation that "an identity thief had opened a fraudulent account" (of what sort, we do not know) in Hicks's name "as a result of information wrongly obtained by Express." Complaint at 2. In any event, this alleged harm would've followed regardless of whether Express acquired the information fraudulently or legitimately: it allegedly flowed from the independent actions of a third-party identity thief. *See, e.g., 859 Boutique Fitness, LLC v. CycleBar Franchising, LLC*, 699 F. App'x 457, 463 (6th Cir. 2017) (failure to show nexus between alleged misrepresentation and any specific injury).

In any event, as noted above, Hicks failed to plead fraudulent misrepresentation with the specificity required under Federal Rule of Civil Procedure 9(b). To do so, the complaint must specify the fraudulent statements, "identify the speaker," "state where and when the statements were made," and "explain why the statements were fraudulent." *New London Tobacco*, 44 F.4th at 411.

4

### C. Fraudulent Omission

This claim requires that "(1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011). Hicks alleges in conclusory fashion that "Express had the duty to disclose" the facts that it "had no intention of hiring" him and "nothing was available." Complaint at 3. For the reasons discussed above, however, no plausible allegations support the truth of those statements. Nor has Hicks plausibly alleged an injury. So the omission claim fails largely for the same reasons as the misrepresentation claim.

In any event, Hicks also fails to allege why Express bore a duty to disclose additional facts regarding the jobs it had on offer or its specific intentions (assuming any existed) regarding Hicks's own application. The bare assertion of a duty, of course, is just "a legal conclusion" that has been "couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *see also Monday-West v. Wells Fargo Bank, N.A.*, No. 20-6381, 2022 WL 16848879, at *5 (6th Cir. Nov. 9, 2022). So the Court needn't accept it as true. *Iqbal*, 556 U.S. at 678.

"Kentucky recognizes four situations that may create a duty to disclose: 1) fiduciary relationship; 2) statutory requirement; 3) 'when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure'; and 4) 'where one party to a contract has superior knowledge and is relied upon to disclose same.'" *Morris Aviation, LLC v. Diamond Aircraft Indus.*, 536 F. App'x 558, 568 (6th Cir. 2013) (quoting *Giddings*, 348 S.W.3d at 747–48).

Hicks does not explain how Express's advertisement for "immediate job openings in the local area" creates a duty to disclose its hiring intentions under any of these scenarios. Complaint at 3; *see also Monday-West*, 2022 WL 16848879, at *5. On the facts as alleged, Express plainly bore Hicks no fiduciary or contractual duty and made no partial and misleading disclosure regarding jobs it *did* have to offer. "When … a fiduciary dut[y] does not exist, the courts have been careful not to apply the other three circumstances so broadly as to transform everyday, arms-length business transactions into fiduciary relationships." *Gresh v. Waste Servs. of Am., Inc.*, 311 F. App'x 766, 772 (6th Cir. 2009). And Hicks identifies no statutory duty of disclosure that Express allegedly violated. The listing as alleged doesn't suggest that Express planned to hire any and all applicants. And no facts alleged suggest that anyone else did or reasonably should've understood Express's advertisement to convey that.

Hicks's contention that "Express" withheld from him that "there were no available job openings," Complaint at 2, is "conclusory and not entitled to be assumed true," *Iqbal*, 556 U.S. at 681. This theory of fraudulent omission appears to be that

5

Express should've told Hicks (before he applied) that actually securing a job would be impossible. This is simply the flip side of his failed fraudulent-misrepresentation claim. And, again, it simply assumes that Express in fact had "no available job openings." The complaint's only allegation to that effect—Hicks's own experience in not securing a job—does not come close to "plausibly suggest[ing]" that Express had no available job openings. *Twombly*, 550 U.S. at 557. So the claim does not "rise to the level of being a fact that could have been fraudulently omitted." *RQSI Glob. Asset Allocation Master Fund, Ltd v. Apercu Int'l PR LLC*, 683 F. App'x 497, 506 (6th Cir. 2017).

### D. Age Discrimination under KRS § 344.040

KRS § 344.040(1) bars employers from, among other things, failing to hire any individual "because of the individual's ... age."

Kentucky's Civil Rights Act, of which § 344.040(1) is a part, "is interpreted consistently with applicable federal anti-discrimination laws." *Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 707–08 (Ky. 2020). And "age discrimination cases under the federal Age Discrimination in Employment Act" are "analyzed under the same framework as employment discrimination cases under Title VII." *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005) (citing *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003)). While "a plaintiff need not establish a prima facie case of discrimination to survive a motion to dismiss, he must 'plead more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Downs v. Bel Brands USA, Inc.*, 613 F. App'x 515, 519 (6th Cir. 2015) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678).

That is all Hicks offered. The complaint alleges only that "Express failed to hire [Hicks] based on age." Complaint at 3. Hicks says he was 65 years old at the time, but says nothing about Express's knowledge, motive, or reaction regarding his age. *See id.* "Broad and conclusory allegations of discrimination cannot be the basis of a complaint." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012). Instead, "a plaintiff must state allegations that plausibly give rise to the inference that a defendant acted as the plaintiff claims." *Id.* But nowhere does the complaint allege, for example, that Hicks "was qualified" for the jobs Express offered. *Nwabue v. Wayne State Univ. Sch. of Med.*, 513 F. App'x 551, 553 (6th Cir. 2013) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir.2003)). Nor does the complaint allege that "a similarly-situated person" not in Hicks's protected age-class "received [a] job" that Express offered. *Id.* (quoting *Seay*, 339 F.3d at 463). Hicks merely alleges the sort of "naked assertion[s] of liability" insufficient to state a claim. *Baum*, 903 F.3d at 580–81 (alteration in original) (quoting *Iqbal*, 556 U.S. at 678)*; see also Downs v. Bel Brands USA, Inc.*, 613 F. App'x 515, 519 (6th Cir. 2015) (bare allegation that plaintiff was terminated "due to his age" cannot form the basis of complaint alleging discrimination).

6

### E. Remedies for Fraud under KRS § 355.2-721

The complaint lists the remedies-for-fraud provision of Kentucky's Uniform Commercial Code. *See* Complaint at 2. But it does not revisit the provision in the allegations; nor does the response to the motion to dismiss address it. So Hicks abandoned the "claim." For good reason: this is a remedial provision, not a cause of action.

KRS § 355.2-721 provides that "[r]emedies for material misrepresentation or fraud include all remedies available under this article for nonfraudulent breach." Even assuming Hicks stated a valid cause of action, this provision is inapplicable because the complaint does not allege that Hicks himself "transact[ed] in goods" as required by Kentucky's Uniform Commercial Code. *See* § 355.2-102. And the allegations in the complaint establish that the transaction between Hicks and Express involved potential employment rather than a transaction in goods. So, as Express noted in its motion to dismiss, the Kentucky UCC does not apply.

### F. Procedural Objections

Hicks also asks the Court to deny the motion to dismiss based on what he perceives as filing irregularities inconsistent with the rules of civil procedure. The record and rules, however, don't support this relief.

Express filed its motion to dismiss on Halloween. Two weeks later (one week before the response deadline), Hicks filed a motion requesting "more time" under Fed. R. Civ. P. 6(b)(1) to respond to the motion to dismiss. DN 6 (Nov. 14, 2022). He apparently could see, on the online docket, that Express had filed a motion to dismiss—but could not open the file since he is proceeding pro se without electronic access. *Id.* at 1. The extension motion accused Express of intentionally mailing its filings to the wrong address and somehow applying a false postmark date in order to deprive him of the full allotment of time to file a response. Yet Hicks said he learned from the "Court['s] docket" that Express's motion to dismiss had been filed, even though "twelve days ha[d] pas[sed]" without him "receiv[ing] his copy." *Id.* at 1.

That same day, Hicks timely filed a response to Express's motion—though purportedly "without being allowed to read" the motion he responded to. *Id.* Nevertheless Hicks's submission addressed Express's arguments regarding, for instance, his injury allegations. DN 7 at 1 (contending mental distress is an injury sufficient to sustain a fraud claim). And he again asked the Court to grant him "more time" (presumably to file an additional response). *Id.* (citing KY. R. CIV. P. 6.02 and 12.01).[3]

---

[3] The Federal, rather than Kentucky, Rules of Civil Procedure govern here. *See, e.g., Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002) ("In federal diversity actions, state law governs

The next day, Express responded to Hicks's motion requesting more time, categorically denying that it "intentionally h[e]ld" or "otherwise delay[ed] service" of its motion. Response to Plaintiff's Motion to Extend Time (DN 8) at 1. But Express did not oppose "a short extension" for Hicks to file a response. *Id.* Express further stated that it would email Hicks another copy of its motion to dismiss, and that it would serve future filings on Hicks "by email and regular U.S. mail." *Id.* at 1–2.

On November 21 (Hicks's original deadline), he filed a "further response" and "request for denial" of the motion to dismiss based on Federal Rules of Civil Procedure 5(a)(1)(B) and (b)(2)(c). *See* DN 9 at 1. Rule 5(a) requires service of post-complaint pleadings, written motions, and other filings,[4] while Rule 5(b) authorizes service by (among other methods) mailing to a party's last known address. Hicks argued that Express "repeated[ly] violat[ed]" the Federal Rules of Procedure by "deliberate[ly] maneuver[ing] to delay, deter, and confuse the delivery of mail by the USPS, to the Plaintiff in a timely manner." *Id.* Hicks stated that he "clearly typed his current mailing address"—a P.O. Box located in Fisherville, Kentucky—"on all pleadings." *Id.*; *see also* Complaint at 1 (listing Fisherville, KY address). Yet the envelope and letter sent by Express listed "Pikeville, KY." DN 9 at 1 (citing DN 9-2, 9-3). Hicks also pointed to "two barcodes" on the envelope, which allegedly showed the address "confus[ed]" the USPS. *Id.* The reason he still "ha[d] not received" Express's motion to dismiss, Hicks surmised, was this "cheap scheme, which is pulled on pro se Plaintiff[s] everywhere." *Id.* Instead, he had to drive to the courthouse on November 14 "to have the Clerk obtain a copy" of the motion for him. *Id.*

Express replied in support of its motion to dismiss on November 29. DN 10. As it did before, Express "specifically denie[d]" Hicks's allegations, saying it electronically filed the motion to dismiss and supplied Hicks with service copies via email and mail to the Fisherville post-office box listed in his complaint. *Id.* at 1 (citing DN 5). Express also stated that it served Hicks with an additional copy of the Motion to Dismiss via email on November 15, 2022 (when responding to Hicks's request for additional time). As to the merits, Express reiterated that Hicks's complaint failed to state a claim and "should therefore be dismissed with prejudice." *Id.* at 2.

None of Hicks's accusations, even accepting them as true, warrants denial of the motion to dismiss under Rule 5 or a further extension of time under Rule 6.

*First*, his arguments do not bear on the (in)sufficiency of his pleadings, which he hasn't moved to amend. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483

---

substantive issues and federal law governs procedural issues.") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

[4] Hicks cited Rule 5(a)(1)(B), which applies to "pleading[s] filed after the original complaint." Although a "motion to dismiss pursuant to Rule 12(b) is not a pleading as defined in Rule 7," *United States v. Snider*, 779 F.2d 1151, 1157 (6th Cir. 1985), the Court liberally construes Hicks's pro se request to cover Rule 5(a)(1)(D), which would cover Express's motion.

8

(6th Cir. 2020) (courts may not "take into account additional facts asserted in a memorandum opposing the motion to dismiss" (quotation omitted)). Nor has he identified any information or research unavailable to him at the time of his first or second filings that he would've otherwise included but for the service issues. In any event, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000). If Hicks believed that he "need[ed] to supplement [his] complaint with additional facts" to "withstand a motion to dismiss," a motion to amend under Rule 15 would've been the appropriate mechanism. *Bates*, 958 F.3d at 483 (citing Fed. R. Civ. P. 15(a)).

*Second*, he hasn't cited any authority for the proposition that the appropriate remedy for a service error is denial of the relief requested in that filing. At least where the opposing party has actual notice, a "violation of Rule 5(b)" by itself "does not provide a sufficient basis" to warrant denying the underlying motion. *McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 557 (6th Cir. 2003). Under similar circumstances, courts have not punished service errors as severely as Hicks would. Denial of a motion "can hardly be appropriate when a party has actual knowledge of a pending motion despite legally inadequate service." *Id.* at 557–58.

*Third*, any prejudice was insubstantial. Hicks learned of the motion to dismiss, retrieved it from the courthouse, and promptly responded. Although delayed receipt would've no doubt inconvenienced Hicks and cost him a portion of his response time, he still timely filed not one but two responses to the motion (plus an additional exhibit filing in response to the reply, *see* DN 12).

*Fourth*, neither the Court nor defense counsel ever indicated he couldn't have all the time he needed to brief the motion. To the contrary, Express offered an extension (DN 8) and Hicks did in fact file additional submissions (DNs 9, 12) after his initial response. Hicks therefore received "a reasonable opportunity to respond to an opponent's motion." *McCall*, 232 F.3d at 322–23.

If Hicks has acquired new information or developed new arguments that might undermine this ruling, then he may of course ask the Court to reconsider it, given the strange procedural history recounted above. But any such motion would of course need to explain why an intervening change in controlling law, previously unavailable evidence, clear legal error, or manifest injustice supported revisiting this order or the judgment that will soon follow. *See generally GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). And it would not offer any occasion merely to renew arguments already considered and rejected.

## ORDER

The Court denies Hicks's request for additional time under Rule 6(a)(1)(b) as moot, given that he proceeded to file a second reply within the time allotted by the

Local Rules and has not attempted to file or seek permission for a third brief (or indicated what one might contain), much less offer good cause for a further extension. The Court also denies Hicks's request under Rule 5(b)(2)(C) to reject Express's motion to dismiss on procedural grounds. Considering all the papers and arguments before the Court, and doing so in the light most favorable to the pro se plaintiff, the Court grants Express's motion to dismiss the suit, without prejudice, because the complaint fails to allege plausible facts on which Hicks could recover. Finally, Hicks's additional request to "proceed to set a" Rule 16 pre-trial conference, DN 9 at 1, is moot given the Court's decision to dismiss the case.

Benjamin Beaton, District Judge
United States District Court

July 31, 2023

10